The next matter, No. 24-1480, Massachusetts Lobstermen's Association, Inc. v. National Marine Fisheries Service, et al. and No. 24-1481, Massachusetts Lobstermen's Association, Inc. v. Conservation Law Foundation, et al. At this time, would counsel for the appellant please introduce himself on the record to begin. He has a 12-minute argument. Good morning, Your Honors. Christopher Anderson for the National Marine Fisheries Service. With me today at council table is Jane Davenport, representing the conservation intervenors. With the Court's permission, I would like to reserve three minutes of my time for rebuttal. Please do. Unless the Court has questions, we will stand on our briefs on the jurisdictional issue, and I will move directly to the merits. Turning then to the merits, this appeal presents a narrow question. What did Congress mean to accomplish when it enacted an exception to a temporary regulatory moratorium for any action to extend or make final an emergency rule that is in place on the date of moratorium's enactment? Both text and context support the conclusion that Congress is authorizing the service to extend or make final a 2022 emergency rule that closed the Massachusetts wedge area to vertical buoy lines. Counsel, if you could just slow down a tiny bit. Sure. Sorry, Your Honor. I suffer from that same thing. Yeah, I know. It's understandable. A 2022 emergency rule that closed the Massachusetts wedge area to vertical buoy lines for the protection of the North Atlantic right whale. Not only is that reading consistent with the text of Section 101B, but it is also the only interpretation that would give effect to Congress's evident intention to exempt some emergency rule from the effects of the moratorium. Can you explain to me? So let's assume for this question I accept you're in place in construction of the statute. Yes. What was the status of that emergency rule the day before Congress enacted the section of the Appropriations Act? Can you explain that to me? Yes. So that rule was a duly promulgated emergency rule that was capable on that date of being extended if the National Marine Fisheries Service found that the requirements in Section 118 of the Marine Mammal Protection Act were met. And it had not made that finding at that time? Is that correct? It had not made that finding at that time, but it had the power to make that finding and subsequently made that finding for the 2023 migration. So assuming I don't think it would affect me to actually doing something at the moment, and I just mean power, existing regulatory power. Yes. Then your position is on that date there was existing regulatory power because we retained the right to continue to declare it as an emergency regulation under Section 4 of this statute? Not just to declare it, Your Honor, but to extend that regulation for an additional period of 90 days. And that's not a trivial power under the Marine Mammal Protection Act, because whereas there are extensive procedural requirements that go into the initial promulgation of an emergency rule, those procedural requirements do not apply to extensions. And so that wasn't necessary. Because all you would have to do, right, is find that the incidental mortality and serious injury of marine mammals in a commercial fishery is continuing. Yes. And you hadn't done that on the day the statute's passed, but you hadn't said it doesn't exist. And so your view is our passing of the emergency rule, which was clearly before the statute, and that provision together gave us continued authority, power, and that's what allows us to later make it final? Yes, that's correct. We think as long as the emergency rule was still capable of being extended, it was still in place. And so, therefore, it was in place on the date of the statute's enactment. And, again, we think that that makes sense of the context in which Congress was acting here. It is the only emergency rule that the Service had issued in the last 10 years or more related to the lobster fishery. Congress clearly intended to exempt some emergency rule related to the lobster fishery. And by referring to the regulation as being in place rather than in effect, we think that essentially what Congress was doing was saying, if there's an emergency rule out there that can still be extended or made final, then that is exempted from. And do you agree the case would be different? Let's assume you had said, we declare on the day before the statute was enacted that there is no longer a serious injury of marine mammals, and we had made that declaration, then that regulation, emergency rule, would no longer have existed? I think that's correct, Your Honor, because at that point the Service would have determined it could no longer be extended. So what happens after one extension? Is it still in place when that extension expires? When that extension expires, I think the emergency rule is no longer in place. But, of course, in this case, that didn't happen until 2023 after the effective or the enactment date of the statute. That's because the date we care about, whether something was, quote, in place, was the day of or before Congress enacted the law or the law became effective. That's correct, because the statute says in place on the date of enactment. That's correct, Your Honor. If I could just say, you know, we don't think that the court needs to look at the legislative history because we think that the Service's reading of the statute is the best reading based on the text and the canon against surplusage and other traditional tools of statutory construction that we cited. But I do want to just clarify that we think that our interpretation is also consistent with that legislative history because Senator King specifically referred to maintaining the regulatory status quo as part of the compromise that was reached in the rider. Well, we have to look outside the text to adopt your argument, don't we? I think you have to. How would we – it seems an essential part of your argument is that there was only one conceivable rule that was there. So I think our argument proceeds in two parts, Your Honor. I mean, our first argument is textual, which is that our reading of the words in place is consistent with this idea that as long as the emergency rule continued to have some legal significance, that it was in place. But then we say that that interpretation, that textual interpretation, is bolstered by the fact that any other interpretation, at least any other interpretation that's been offered, would render Section 101 be a nullity, which the Supreme Court has said courts should avoid if there's a textually plausible interpretation that doesn't nullify Congress's enactments. Referring back to A, A deems sufficient the current plan or authorization. That's correct, Your Honor. It's sufficient for compliance under the Marine Mammal Protection Act and the Endangered Species Act. Does a finding, if we assume that everything's sufficient as specified in A, does the agency still have the power to promulgate a regulation? The agency, so... I'm just talking in general. In general, right. So apart from the exception in 101B. So the service is not taking a position on that. The service has, to this point, interpreted Section 101A as effectively imposing a regulatory pause and is acting in accordance with that. The service hasn't formally made a determination as to what the legal effect of 101A is in regard to whether there is any other authority to issue regulations. Again, though, I would stress that 101A is limited to compliance with the Marine Mammal Protection Act and the Endangered Species Act and does not cover other possible regulatory requirements that might be relevant to the lobster fishery. But if I could just finish my point on the legislative history, I expect that the Lobsterman's Association will argue that Senator King said that the rider's purpose was to, quote, pause the economic death sentence. And I just want to clarify that the economic death sentence that Senator King referred to is not regulation of the lobster fishery in general or the wedge closure in particular. It was specifically this judgment of the District Court for the District of Columbia in the Center for Biological Diversity case. If the Court has no further questions, I will reserve the remainder of my time. Okay. Thank you. Thank you. And I know co-counsel has three minutes, but you left a minute 30 seconds less, so she can use that if necessary. May I please the Court? Jane Davenport for Conservation Group Appellants. Conservation groups agree that the only plausible reading of 101B is that it must cover the 2024 final rule. The District Court's reading and the Lobsterman's Association leads to the absurd result that 101B was a nullity on the day Congress enacted it. And the First Circuit precedent of U.S. v. Gordon has instructed where there are two plausible readings of language in a statute, the Court's job is to give effect to the one that ensures Congress's intent is carried out. Stepping back more broadly, though, Section 101 is best understood as two solutions to two different problems. 101A addressed Maine's perceived problem with the District Court's remedial order in the Center for Biological Diversity case that my colleague referenced because Maine believed that that order would lead to widespread fishery closures subsequent to this month, December 2024, not simply because the District Court directed NOAA fisheries to remedy its MMPA violation in the 2021 regulation with a new MMPA rule to fix that violation, but also because the District Court found that NOAA fisheries had violated the Endangered Species Act in the 2021 Biological Opinion. And despite holding a decision on whether to vacate that unlawful opinion in abeyance, the perception of Maine was that that removal at some point of that incidental take authorization might lead to widespread fishery closures because the standard for incidental take under both the MMPA and the ESA is much more stringent than the standard under the MMPA for promulgating a regulation expected to reduce serious injury and mortality to below potential biological removal within six months. So 101A is best understood as a legal shield against the liability found in the District Court's decision. And that is not only from the plain language of the statute, which contains no words of prohibition stating NOAA fisheries shall not regulate this fishery, but also crucially because of the inclusion in that language of the 2021 rule being deemed sufficient for both federal and state agencies in their fisheries authorizations because state fisheries agencies are not subject to the MMPA in the way that NOAA fisheries is. Why do we need to decide whether 101A is just a moratorium or is a legal shield or both? Why is that necessary to decide this case? Your Honor, we assert that it's not necessary to decide the meaning of 101A. Why is it even right? Because there is no regulation after. I mean, the only, at least their argument is, the government's argument is, this regulation is already in place. That's covered by B. So we don't even, I don't even, I didn't understand why we have a problem in this case under A. If I could answer both questions. Because in order to find for the appellants, you need only reach the 101B issue that the district court read it out of the statute. However, in order to find for appellees and to uphold the district court's decision, you would need to reach the question of whether 101A in fact imposes a temporary moratorium such that the alleged violation of 101B means that the 2024 rule is out of bounds. Thank you, Your Honor. Thank you. Okay, let's hear then from Massachusetts Law Ceremonies Association. Please introduce yourself on the record to begin. Thank you, Your Honor. First, may it please the Court, I'm Daniel Craig from the law firm of Eklund & Blando. With me is my partner, Sam Blatchley, on behalf of the Massachusetts Lobstermen Association. Please go ahead. I'd like to start briefly with the jurisdictional issue that we raised. The government, in its brief, says that the Attorney General has instructed Department of Justice trial attorneys to file notices of appeal to preserve the government's right to appeal in all cases in which the Solicitor General has not made a final determination that no appeal will be taken. And they cite to the DOJ manual section 2-2.132. I'd ask the Court to specifically look at that. That portion of the manual only is triggered if the U.S. Attorney is lead counsel. If you look at the record in this case, the U.S. Attorney or any assistant U.S. Attorney was not present at the trial in this matter. Let me ask you, Counsel. That Attorney General manual doesn't create enforceable rights. It's an internal manual. Well, if that's true, Your Honor, then their argument doesn't carry any water. It's their interpretation of the regulation, right? We're interpreting a regulation, not a statute, correct? Correct. It's a regulation. And the government interprets that regulation to say that we can file protective notices of appeal as long as by the time this thing is actually litigated, the Solicitor General has signed off, and that's their construction. And is your position we can't accept the government's gloss on that because of Loper Bright? Because I didn't understand Loper Bright's overrule hour deference, but maybe I'm wrong about that. No, I think it's a little simpler than that. Their own regulation only speaks to when the United States Attorney is lead counsel. Are you saying that there's no jurisdiction then for this appeal? I am, Your Honor. Because the Solicitor General did not ratify within the time for... That's in that manual. That's not in the law. Well, 28 CFR 0.2B is the regulation that we cite, saying that the Solicitor General has to decide whether to take an appeal. And you're saying that that means that that decision has to be made by the time the initial notice of appeal is decided? It has to be made within the 60 days that Congress has allotted for appeal. And so on that day, if the Solicitor General hasn't decided, it's over, the government can't appeal. And their understanding, whether by a manual or just their practice or interpretation of their own regulation, is no, we can file protective notices of appeal and giving us more time for the Solicitor General to make the final decision. And you're saying they can't have that gloss in the regulation Well, I'm saying, even if we accept that, that's not what the regulation says. Because in this case, it only empowers the U.S. attorney to file that protective notice of appeal if they're lead counsel. The U.S. attorney was not present at trial in this case. The U.S. attorney didn't even file the notice of appeal in this case. This was filed by DOJ trial attorneys. Their own regulations do not authorize DOJ trial attorneys to file a notice of appeal. Suppose that's the case. Why does that mean we have no jurisdiction if it's been ratified after the fact? Because under FEC versus NRA Political Victory Fund, the Supreme Court says that ratification must occur within the time period in which the Solicitor General would have originally had to act. I realize that there's a whole other issue about an independent agency litigating in that case. I'm not touching that. The second issue that the Supreme Court dealt with was pure agency law, which is ratification must occur within the statutory deadline. It cannot occur after. And so when you apply FEC versus NRA Political Victory Fund to this situation, where we don't even have an authorized protective notice of appeal, the Solicitor General had to ratify, make that decision within 60 days. Do you have any cases that deal with the Solicitor General not ratifying, there being no jurisdiction? Well, not that it went my way, but there are older cases for the most part. So the Hogg decision from 1970 dealt with a prior version of 28 U.S.C. 0.2 that only spoke to the Solicitor General authorizing an appeal. It didn't have the current language of deciding whether to appeal. There was another 1994 case. I believe it's – actually, it's – it still comes after FEC versus Federal Election Commission. And so I was aware of it, and that was kind of quickly discarded on the notion that that was really about the independent agency issue. It didn't have a situation here, as far as I can tell, about the U.S. Attorney not being lead counsel and not having that protective appeal issue. This is, I think, a brand-new issue that we're talking about here. Okay. Okay. But turning to the actual merits of the case. One other question. How do we know that reference to United States Attorney is simply not a reference to an attorney representing the United States? Well, U.S. Attorney, I mean, it's a defined –  U.S. Attorney often means, you know, one for each district appointed by the president. But attorney – United States Attorney could be read as referring to any attorney who is an attorney of the United States. I'm not aware of anything that supports that, Your Honor. I mean, the Department of Justice goes to great detail to specify, if you look at every signature block, saying that there's an assistant attorney general at the top. These folks handling the trial in this case from DEJ said trial attorney. They're never referred to as United States attorneys. I'm only aware of that office being created for districts, for federal districts. Turning to the merits of the case, unless the court has any other questions on it. Go to the merits. I'm sorry. The U.S. Attorney reference is in the manual. Correct, Your Honor. The regulation doesn't say that. Correct. But again, they're relying on the manual. That's their – Whether it's a manual or not, can't they have their own gloss on what that regulation, their own interpretation, whether it's in a manual or some other place? This is how we construe it. And I guess I go back to my original question. If that's a reasonable construction, which, by the way, has a lot of practical sense to it, why can they not construe the regulation, put the manual aside, that way? Well, the regulation is unambiguous. The solicitor general must make the decision of whether to appeal. And then it's what does it mean to appeal, and does that preclude protective notices? And that seems to me to be a question in which reasonable minds can differ. And if reasonable minds can differ, why is their gloss not an acceptable one? Well, okay, so what's the source of authority for the protective notice of appeal? They've cited the manual that says only when U.S. attorneys are lead counsel can they do that protective notice of appeal. And why can't they just construe 28 CFR.2 to that to say that that gives us the authority to do it? Because what appeal will be taken is open to construction, and we construe it to mean allowing us to take some protective steps to figure out whether we're going to take an appeal. I can only say because the words just don't support it.  So turning to the issue in this case of trying to find a meaning for the word in place that is different than in effect. I submit you're onto the cases served by the district court that we've cited in our brief. There is simply no term of art in American law that where in place means something different than in effect. Here's my effort at that. The sentence, the amendments of the sentencing guidelines are in a place, but they won't take effect until December 1st. Do you know what I mean? Not specifically, Your Honor, but I think I'm following. So the power, the decision has been made, the thing has been written down, the government says it's going to do this, but they say it's going to take effect on December 1st. We do that every year. And I just used the two words in the same sentence to mean different things, and I think you understood what I meant. I did, Your Honor. Okay, so let's take that and talk about how in place doesn't even work for the government's case in this position here. In the Holly Frontier case they rely on, which is about extensions and viewing the language of statutory extensions in context. The context here is the Marine Mammal Protection Act emergency regulations provisions. The MMPA emergency regulations provide for essentially seasonal emergency regulations. It says that the agency only has authority for an emergency rule to extend to the earlier of, the close of fishing season, or 180 days. And so the fishing season for lobsters is around the calendar, right? Correct. So we're talking about a 180-day situation here. That would get us to September 18th of 22. They are allowed one extension. That would get them, I believe, to December 27th, which I believe is before the day of enactment. And again, they didn't actually extend it in September. My point is that they couldn't have, essentially. Say that, make that argument again to me. So they had 100? So 180 days gets them to, I believe it's September 18th. And then if they had the power to extend that for a further 90 days, that only gets them to December 27th of 22. But do they have to extend it immediately? Or can they say, because it appears in this situation, at least, the problem occurs seasonally, as I understand it. So do they have the authority to say, look, this problem will not arise again until next, let's just say April. Will not arise again until next April. So that's when we're going to take advantage of our 90 days. But meanwhile, it's on the books. And in next April, we're going to do it. I don't think that's a fair reading of their power when you look at the context of the regime. Congress, under the MMPA, clearly thought that emergencies should be temporary in nature. And then if the thing is going to continue, they should deal with it with final rulemaking. And they have to after they do one more extension because it looks like, and I think your friend agreed, they get one shot at that and then either make it final or it's over. But the nature of the extension is 90 days from the 180. It's essentially 270 consecutive days if you're reading this. So you added consecutive, and I want to know where you get that from. So, again, under Holly Frontier, we read extension in context. Holly Frontier was a case where there was no temporal limit on the timing of the extension that the EPA could give. That's different than this case where Congress puts very strict temporal limits on the emergency rulemaking power. So are you saying that the extension, and I think it was February 23, was too late, itself was ineffective? Correct. And we did litigate that in the District of D.C. where Judge Bozberg seemed to agree with us but didn't say we had irreparable harm. He didn't say he seemed to agree with you. You're referring to some oral comment made by – Correct, to the transcript that we've made part of the record here, but yes. I hope you're not going to do the same with the transcript of this. Well, I'm hoping to just win this one on the opinion, Your Honor, and I won't have to do that. But, yes, our position was that the extension in 2023, because, again, it goes well beyond the 270 days, was not a proper extension under the MMPA. But if the day before the statute, the Appropriations Act was passed, they made the finding, this problem continues. It's not going to happen again until next April because that's just the reality of the world. And so next April we're going to do this again and invoke our 90 days. You say they couldn't have done that. No. I suppose what they could have done is done the extension – I'm going to strike that, Your Honor. Yes. My position is the 90 days had to be consecutive. And so this couldn't have been done in 23. You're counting the days as, if I'm understanding your math, a day counts even if the regulation isn't in effect. Well, there's a difference between the regulation being legally effective and the content of the regulation specifying essentially when the prohibited period is in, which is part of, I think, what gives this some difficulty in analyzing. You know, a law can be in effect 365 days a year, but, you know, prohibiting snow plowing, but it's only going to have an effect in winter, right? No, but this law specifically says when it's in effect. It says we're passing a law now, but it doesn't affect anybody right now, but come April it'll affect you. Correct. You're counting January, February, March. The other side's counting just the days in April that it is effective. Correct, Your Honor. I guess what I'm saying is for it to be in place, it must be actual law, regardless of the content of it specifying when it's in effect, when the prohibition takes place. What text in the rule do you point to that would cause us to count days where the statute is, where the regulation is not in effect? I'm relying on the MMPA, providing that the emergency rulemaking power is cabined, it's limited, it's end of the fishing season or 180 days plus maybe a 90-day extension. And if you deem that to be non-continuous and you accept my contention that in place means power, you know, that it hasn't been expunged, I guess my question is what do you make of the first part, which requires a finding that there's a continued risk of serious injury. If that finding wasn't made when Congress passed the Appropriations Act, then what is the import of that? I mean, did they have to – your argument seems to be, or at least as I understand it, if I don't accept the continuousness, you're arguing that there was no emergency regulation in place the day before Congress passes the statute. And they said to me, well, yes, there is, because we still have the authority under Section 4 to make the serious injury finding, and while we didn't do that until later, because we had the ability to do it, something was in place. Do you agree or disagree with that? I disagree because the power under the MMPA does not mean the regulation is still in place. The power to extend it must mean that it's not in place, that it's not in effect. So you equate – you're left with – to go your route, we would need to say that the statute uses two different terms to mean the same thing, in effect, in place. Yes, Your Honor. That's not normally how we read statutes. Well, I understand that, Your Honor, but there's just simply – in place is an insufficient term of art to carry the burden that the agency wants it to make in light of the MMPA's restrictions on its emergency rulemaking powers. I mean, tax statutes all the time. Congress passes a tax statute today and says any capital gains earned in calendar year 25 shall be treated as X. That's law. It's in place, but it's having no effect today. It won't have any effect until – it's still law. It's still in effect in the sense that it is the law. Its application – its temporal application comes at a different time. But it suggests it's common to think of a difference between in place and in effect. We can have a rate can be in place, although it's not currently having any effect. So, Your Honor, if it was so common, the case law should reveal that, and it just doesn't. You know, a nationwide case search – Yeah, we've both given you hypotheticals that seem to be that. And no one's really disagreeing with – we're not understanding what we're talking about. So I don't know what the cases say about that, but it seems like in common parlance people talk that way and say something is in place, but at this moment it's not doing anything at this moment for external reasons, like it doesn't matter right now. And so it's not in effect, but it's still in place. And I guess what I still think this case hinges on is, was it in place the day before the statute was enacted? And to me it had run its course. It wasn't – but yet, what I'm told is, but yet it wasn't over because we reserved the authority under the statute to do it again, and that's what makes it in place. And is there anything wrong with what they said about that they still had the authority under this piece of law, this emergency regulation, coupled with the statute, to make it work next April? So I'd say, I think even under their construction, in place doesn't mean residual authority to extend the law. In place would mean that it still has the character of law, but it's going in operation in some future time. Under the MMPA, the emergency rule ceased on September 18th to have the force and effect of law. Of course, the other issue you have, and I know you addressed it in your brief, which we're familiar with, is your reading renders B as of no effect, not in place, not existing, redundant, whatever. Well, what I'll note here is it doesn't mean it's superfluous, that the canon of surplusage does not address a failure of practical application for a statute. But if there were ever a situation where that canon makes sense to use, I feel like it's this one in the sense that Congress is legislating against a world that they understand this is what the District of D.C. did, we don't like it, we're going to do this, and we're going to preserve emergency rules that can be made final that already existed. So they understood the world. It wasn't like what we were litigating, we're legislating for future events. And then the interpretation is, but the big exception that applies to nothing, even though they understood the world in which they were legislating. That doesn't make a lot of sense. Well, I mean, there are drafting failures, Your Honor. And we have to live with the text that Congress passed rather than trying to- Well, we say they made sense of it, and they knew that the wedge issue was out there, and it's a problem, and that's the one we're dealing with, which is their argument. So between Congress didn't know what it's doing or Congress did something that makes sense, it seems like makes sense is a better outcome. We still need to go back to the text and the MMPA background. And on the date of enactment, there was no regulation in place or in effect. And we might guess at what Congress would have rather done if that were not so, but I don't think it's the court's position to- And just to be clear, in effect is nowhere. That's Judge Young's gloss on in place equals in effect. But the statute says in place. Correct, Your Honor. But again, because the reg sunset on September 18th, it was not in place, even under the government's rather generous reading of that word. I do want to address the conservation group's arguments here on- You have one minute for that. On 101A, turning back to the candidate against surplusage. If 101A provides no restrictions whatsoever on further regulation, there's no reason for 101B to exist as an exception altogether. And so we agree with the D.C. Circuit and what Judge Young said, that this is a regulatory standstill, which the agency seems to concede. So with that, Your Honor, I'd be happy to take any questions. No further questions. Thank you. Thank you. Three minutes rebuttal. Please reintroduce yourself on the record to begin. May it please the Court, Christopher Anderson for the National Marine Fisheries Service. Just three quick points, Your Honors. First of all, the Justice Manual is not the source of the authority for the trial attorney to file the Notice of Appeal. That authority is the Attorney General's statutory authority to conduct any kind of legal proceeding on behalf of the United States. The Attorney General has delegated his authority to the Assistant Attorney General of the Environment and Natural Resources Division, who has instructed trial attorneys in the division both to follow the Justice Manual, which is not a regulation, it's merely a published guidance document, and specifically directed those attorneys to file protective notices of appeal. Does the statute require the Solicitor General to sign off, or is that a regulation? That is a regulation. And what would happen? That's just a different hypothetical. The Solicitor General doesn't sign off, and somebody goes ahead, and nobody catches that problem, and the case proceeds along. Is that a basis for dismissal? I don't think so, Your Honor, because the jurisdictional statute that governs this court's jurisdiction just speaks to the timely filing of a Notice of Appeal. And, again, because the filing of a Notice of Appeal, the authority to do that is the Attorney General's authority, not the Solicitor General's authority to determine the content of the appeals in Section 0.20. Let me ask you also, the rules of appellate procedure refer to the United States, or an agency thereof. It doesn't refer to the Solicitor General approving it or layers of approval. Correct, Your Honor. We think the rules and the jurisdictional statutes. I assume, like, the purpose of the manual is, for example, for the Solicitor General to be aware of everything that's getting appealed, because he might have this case in the First Circuit, it could be a similar case in the Tenth, in the Ninth, not in the Tenth, probably, but in the Ninth, or in the Fifth, and, you know, national uniformity issues. That's, you know, he wants to know what's going on, or there's a split, or maybe this is not something we should appeal now, let's leave it the way it is. That's why that regulation is there. That is why that regulation is there, and the Supreme Court has noted as much in NRA political victories. But it's not a jurisdictional regulation. It's not a jurisdictional regulation. If I could turn to the question of the extension authority under Section 118. We think it's pretty clear from the text of the statute that extensions of emergency regulations do not need to be continuous. Section 118G3 provides for the time limit of the initial period of the regulation, and then 118G4, a separate subsection, says that NIMS has the ability to. So what is the time limit on an emergency regulation? So you happen to do it the next season. What if you did an emergency regulation in 2022, you don't do it, and then you wait 10 years, and you say, the problem's back, we want to take advantage of our 90 days. Can you do that? Probably not. So there are a couple of reasons why not. So, one, the emergency conditions would have to persist for that 10-year period, and the MMPA instructs in 118G1 that the services required, it says, And if they're persisting for that period of time, that sounds pretty necessary. Apart from that, the service is bound by the Administrative Procedure Act, which requires that actions not be arbitrary or capricious, and without conceding any specific factual circumstance, likely they would be. The last point I would just make, Your Honors, is I take the Lobsterman's Association to concede that under their interpretation, there is no practical effect, nor could there ever have been any practical effect, to Section 101B. And we think that that's just not the right way to read a statute if it's not necessary. This Court said in City of Providence v. Barr, that the lodestar of statutory interpretation is the effectuation of congressional intent, and we think Congress's intent in the statute is clear. Thank you, Your Honors. We ask that the judgment of the District Court be reversed. Okay. Thank you. And safe travel for those who are heading back to Washington and for those staying in the vicinity also. Thank you, Mr. Chairman.